In re DREYFUS.
Patent Appeal No. 3222.

Court of Customs and Patent Appeals.
March 5, 1934.

Lloyd B. Wight, of Washington, D. C. (I. Seltzer and C. W. Levinson, both of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Appellant has appealed here from the decision of the Board of Appeals of the United States Patent Office, affirming the decision of the Examiner rejecting claims 53, 55, 57, 59 to 65, inclusive, 67, and 68 for an alleged invention relating to a certain ornamented artificial silk fabric and the process of making it.

Claims 55, 60, and 68 were regarded as illustrative by the Board, and will be so regarded here, and follow:

"55. A process for the ornamentation of fabrics containing individual filaments of a low flammable organic thermoplastic derivative of cellulose which comprises treating the fabrics with a softening agent for the derivative of cellulose and permanently deforming the individual filaments of portions of the fabric by passing said fabrics slowly between heated rolls formed with a design thereon, thereby producing effects ranging from a simple glazing without coalescence of the individual filaments to complete coalescence of the thermoplastic filaments in said portions of the fabric."

"60. A fabric containing individual artificial filaments comprising a low flammable thermoplastic derivative of cellulose and hav-

ing portions of said individual filaments permanently deformed by application of a softening agent for the derivative of cellulose and heat and pressure so as to present effects ranging from a simple glazing without coalescence of the individual filaments to complete coalescence of said thermoplastic filaments in portions of the fabric."

"68. A fabric containing individual cellulose acetate filaments having certain portions of said filaments permanently deformed so as to present an embossed design with the effects ranging from a simple glazing without coalescence of said filaments to a complete coalescence of the cellulose acetate filaments in local portions of the fabric."

The references relied upon are: Linfoot, 1,137,501, April 27, 1915; Dreyfus, 1,754,-164, April 8, 1930; Wheeler, Manufacture of Artificial Silk, p. 90; Denny, Fabrics and How to Know Them, pp. 66 and 68.

Claims 53, 55, 57, 59, 62, and 63 were rejected on Linfoot. Claims 60, 61, 64, 65, 67, and 68 were rejected upon the ground that they were not inventive over the claims in appellant's patent No. 1,754,164. Claims 60, 61, 64, and 65 were rejected by the Examiner on the same ground as referred to by the Board, but the Examiner also rejected these claims upon the ground that they were article claims limited by the process of making the article, relying on Ex parte Brown, 58 App. D. C. 285, 29 F.(2d) 873, 383 O. G. 558. The Board did not refer to the Examiner's second ground for rejection. The Solicitor for the Patent Office has suggested that there is no reason of appeal based specifically on this ground for rejection. In view of our conclusion, it is not necessary for us to consider any phase of this question.

Concerning the reference Linfoot and the rejection of certain claims upon such reference, the Board said: "Claims 53, 55, 57, 59, 62 and 63 were rejected on Linfoot. The reference discloses the application of various effects, patterns or designs to fabrics by superposing a fabric carrying the design upon a fabric to which the design is to be imparted, and applying steam and pressure thereto. This patent, on page 1, lines 65 and 66, states that the process is especially adapted for treating fabrics of artificial silk but the appellant contends that such artificial silk is not of the type covered by the claims and has filed an affidavit in support of his contention by Harry Price, an expert dye chemist who has had long experience in the dyeing, finishing and cleaning of fabrics, alleging that thermoplastic fabrics or cellulose acetate

fabrics were unknown at the date of the Linfoot patent and that the patentee could not have had in mind the fabric or artificial silk of this class. The patent states that the result of the process is to produce on the artificial silk an increased lustrous sheen but the affidavit of Price states that the use of steam on cellulose acetate fabrics destroys the sheen, which is alleged to be further evidence that Linfoot did not have in mind the thermoplastic or cellulose derivative fabrics. Whether he did or not, this patent discloses a process of embossing or imparting to fabrics any desired design by means of heat, pressure and steam, the design or pattern fabric serving as a die for imparting the design."

The Examiner cited the Wheeler publication as evidence that steam was a softening agent. In appeal from the Examiner to the Board, and in this appeal, the appellant questioned the propriety of the reference to this publication. Concerning it, the Board said: "The Examiner cites the Wheeler reference as evidence that steam is a softening agent. All that appears from this reference is that nitrocellulose and cellulose acetate threads have less strength when wet than when dry. The appellant contends that this does not establish that water necessarily acts as a softening agent as it might produce some other effect on the thread which would tend to reduce its tensile strength. The appellant points out that the Wheeler reference was published in 1928 whereas the present application was filed in 1925. He does not really deny that water has a softening effect, but says that it is not a softening agent for cellulose acetate or other organic derivative of cellulose material in the sense called for in this application. It is to be noted that none of the rejected claims specify any particular softening device and claim 66 which does so was allowed by the Examiner."

The Denny publication was referred to by the Examiner because it disclosed the idea of producing moiré effects on fabrics by the use of engraved rollers by employing dampness, heat, and pressure. The Board calls attention to this holding on the part of the Examiner and affirms the position taken by him.

We agree with the Board that as to the method claims 53, 55, 57, 59, 62, and 63, there is nothing inventive over that which is shown in Linfoot and Denny. Linfoot discloses that various patterns and designs could be placed upon fabrics by superposing a fabric carrying a design upon the fabric to be treated and by then applying steam and pressure thereto. The method claims involved here call for applying a softening agent for cellulose derivatives and then applying pressure and heat so as to imprint on the cloth the figure or design which is pressed down upon it. Linfoot, on the first page of the patent, lines 65 and 66, specifically recommends his process for treating fabrics of artificial silk. Appellant states that artificial silk of the type referred to in his claims was not, until long after 1915, a commercial product obtainable on the market. We cannot see how this fact, if it be a fact, prevents Linfoot from being a proper reference in this case.

It will be noted that appellant's appealed claims are not limited to any particular softening agent. Claim 66 specifies a particular softening agent, and it has been allowed to the applicant for that reason.

It is also argued by appellant that it was improper for the tribunals to rely upon Wheeler as showing that steam is a softening agent for the reason that Wheeler was published after the application involved herein was filed.

Wheeler is not relied upon by the Patent Office as a reference in the sense that it, by some inventive suggestion, anticipates any feature of appellant's claims.

In assignment of error No. 6, it is claimed that the Board erred in basing any rejection on Denny and that the Examiner cited Denny only to show that moiré fabrics of natural silk or cotton are old. Appellant argues in his brief that Denny is not pertinent since the claimed invention at bar is not concerned with moiré fabrics nor with natural silk or cotton fabrics.

Denny discussed and defined a moiré and said: "Watered or clouded effect on silk. * * * produced by the flattening at intervals of the corded surface, the original roundness remaining in other places. Also, on plain or satin weaves by means of engraved rollers with heat and pressure. * * * "

We think the reference to Denny was proper inasmuch as it showed that it was old to impose upon dampened fabrics a design which, in that instance, was moiré, by means of heated engraved rollers.

With reference to the Board's rejection of claims 60, 61, 64, 65, 67, and 68 upon the claims of applicant's patent No. 1,754,164, the appellant here argues to the effect that his patent, which was granted upon an application filed subsequent to the application at bar, contained claims relating only to moiré designs which may be regarded as spe-

cific claims, that his present application, which was first filed, now contains generic claims, and that the fact that his specific claims were allowed in a copending application is no bar to the allowance of the claims at bar which he claims are generic claims.

Appellant states:

"The real question is whether the appellant is entitled to broad claims in an application filed prior to an application which issued as a patent containing specific claims under the circumstances prevailing. It is submitted that the law is well established that in such a case the appellant is entitled to the broad claims in his earlier application. * * *

"It is the law that the mere fact that a patent with specific claims has been previously granted is not sufficient to prevent the grant of or invalidate a later generic patent, when the applications are copending and the patents are for different inventions.

"This rule of law has been succinctly stated by this Court in the decision of In re Byck, 48 F.(2d) 665, 666, 18 C. C. P. A. 1208, 1931 C. D. 391, as follows:

"'Appellant cites many authorities in support of his contention that his said patent is not a bar to the allowance of the claims in issue. The cases so cited appear to establish the rule that, where two applications by the same inventor are copending, it is a matter of indifference which of the patents is issued first, provided that the claims are for separate inventions. Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co. (C. C. A.) 22 F.(2d) 259, and cases cited.'"

In the same case it was held that: "The issuance of the first patent does not abandon the unclaimed matter in its disclosure, the pending of the second application rebutting any such inference."

As we see it, the question presented in appellant's quoted argument is not in this case. In the patent, the claims are for a moiré effect. In the instant appeal, the claims are for a luster effect and designs generally. This does not present a case of generic and specific claims which makes the cited authorities applicable. On this phase of the case the Board said: "The claims to the fabric were held unpatentable over appellant's patent No. 1,754,-164 and as the softening agent merely enables the embossing operation to be carried out at a lower temperature than without it, we do not see that the product would be substantially different in the present case from that of the patent. It is true that the claims of the patent are drawn to a moiré design but

we consider a mere change in the design immaterial in determining the patentability of either the method or product."

It seems to us that, if it is conceded that the article claims in appellant's patent differ only from the article claims at bar in the fact that they are specific to moiré in the patent and generic to a fabric containing different kinds of designs specified in the claims, the claims are not for different inventions, since it would seem that appellant could not have a separate patent for a moiré design and another one for a floral design made by the same method on the same kind of material. It must be remembered that appellant's patent was for a "textile material" comprising individual filaments of derivatives of cellulose so treated as to present a moiré design, and that the article claims in the instant application relate to "a fabric containing individual artificial filaments, etc.," having portions of said filaments deformed by the use of softening, heating, and pressing agencies so as to present different kinds of designs. The invention in the patented claims did not rest in the fact that the textile produced was new, in so far as it had a moiré design on it. The inventive concept there was not in producing a moiré design, but was in producing the design in the manner stated.

The Solicitor for the Patent Office aptly discusses this phase of the case in the following quotation from his brief:

"Appellant argues at page 17 of his brief that—

"'It is clear that the claims of appellant's Patent, 1754164, do not read on and are patentable over the disclosure of the application on appeal, since the moiré fabric claimed therein is patentable over the embossed fabric generically described in the application.'

"It cannot be conceded that a fabric with a moiré design thereon is patentably different from a fabric with any other design thereon. Different designs on fabrics may of course be patentable in design patents but in mechanical patents (here involved) a patentably different structure of fabric is not made by changing the design impressed thereon. It is submitted that both the examiner (R. 27) and the Board of Appeals (R. 32) were right in holding that the change in the design impressed does not make a patentable distinction."

We find no error in the decision of the Board of Appeals, and it is affirmed.

Affirmed.